I'm here, Your Honor. Thank you, Your Honor. May it please the court, I'm James A. Stuckey, attorney for the appellants in this case, and Mrs. Alyssa Collins, who's seated with me at council table, are representing the appellants. This is a qualified immunity case we've set forth fully in the record. The facts of the case, just to very briefly summarize them, the court is very familiar with them, of course. This arose in an action brought by a pretrial detainee at the Berkeley County Detention Center, and the key issue in it is whether or not the defendants, or the appellants in this case, are entitled to qualified immunity for basically a 20-minute delay in not responding to a threat that a pretrial detainee suffered. He was booked into the detention center, and Sergeant Maybank, who was the original admitting officer and who was a senior officer on duty, saw him at that time. There's an allegation by the appellee that he was wrongfully assigned. We disagree with that. There were two pods, or two cells, in which detainees were housed, one being pod B and one being pod C. Pod B was for the violent, aggressive detainees. Pod C was for the ones who were not as aggressive. So you're saying you disagree on the facts? No, we do not disagree on the facts. The facts are clear, Your Honor. All right. There are no disputed issues of fact here? No disputed issues of fact. No disputed issues of fact. Otherwise, we wouldn't be here with Johnson v. Jones, I don't think, because we agree that the, well, there's no dispute on the facts. The fact was that the admitting officer, Sergeant Maybank, assigned this one to C-1. He, this detainee, the appellee, was charged with sexual assault upon a female minor less than 16 years old. That, in South Carolina, is a felony. That, in South Carolina, is a violent crime. That also requires him, under the policy of the jail, to be placed in a cell without violent offenders, correct? Well, he would have been, under the normal assignment orders, he would have been placed with the more violent offenders than he was placed with. He would have been placed in B, but he was placed in C, and he was placed in C because of the overcrowding conditions in the jail. So, it may very well be, Your Honor, that, that precisely the detention center regs were not followed because of the exigencies of the situation, and that is that they were overcrowded that night. What was the exigency of the situation? The exigencies of the situation were that they were crowded, they were overcrowded, and the larger one, and the more violent one, which was, was B, and so he was placed in C. They make the argument that he was improperly placed. However, we submit that under the charge against him, and that was the sexual assault of a minor female, that he should, he was, that's a violent crime under South Carolina law. It's a felony under South Carolina law. So, I think he appropriately could have been placed with the most violent offenders. He was not placed with the most violent offenders. He was placed with basically the secondary offenders. Now, because of the assignment rules, they probably had some violent and aggressive offenders in B because they didn't have a place to put them in, in, or put them in C because they didn't have a place to put them in B. And so, go ahead. What, what is the legal determination you're asking us to make? The legal determination I'm asking you to make is that you are entitled to qualified immunity when you act to maintain order and discipline in a detention facility, and you delay for only valid reasons for 20 minutes. That there's no established law saying that if you have valid reasons to, to delay 20 minutes in, in reacting to a message from a detainee that he is in a threat, that that is no liability on that because these offices exercise discretion. And we quote, first of all, we don't think it's a, you have, of course, two criteria for qualified immunity. You have the fact that we're the Mr. Stuckey, if I could, you, you, it seems to me that you have, uh, wandered into a different issue. You, you have two issues here. You have the assignment issue and you have the failure to protect issue. That's correct, John. So it is similarly, you say that there are no disputed issues of material fact as to the assignment issue. Are you also saying that there are no the failure to protect issue? That's correct, John. Look, I think, I think we agree that the failure to protect was that you had two officers, officer, the two named appellants, that is Officer Tucker and Officer Wigfall. And when the appellee was going through the breakfast line around four o'clock in the morning, he supposedly told Tucker, I am scared to go back in there. If it's not disputed, then there's no supposedly. No, it's not. It's not disputed. He told him that. And we adopt and concede exactly what the appellee says in this case. And we've cited that in our brief, Your Honor, that. I was just reacting to the, your use of the word supposedly. That sounded like it was disputed. It's not, it's not disputed. We concede and I think the record is clear, accepting and we view in the evidence in the light most favorable, of course, to appellee. And that is that there was a 20 minute delay from the time that he told the officer when he went through the line. Now, this is not a situation where it's the guards did anything improper. They beat him up. Anything like that is just a failure to protect case. And we maintain that the reason they delayed in doing that was to maintain order and discipline in the facility. And we cite that in our brief. And the fact was that they were feeding three in excess of 300 inmates that had him going through the line. Now, the officer said that he was told the appellee was toe. Well, I can't do anything about that now by detention officer Tucker. But I'll get back with you in a minute. As soon as we finish the feeding, as soon as we finish distributing the medications. Now, of course, we all know that detention facilities and correctional facilities are tender boxes that in in fact, anything can set a situation off like that and you can have problems with it. So the officers said they did not want to get the prisoners riled up. They did not want to delay the breakfast because of what they had been told by Pele. So he said, Tucker said, I will get back with you in just a minute or so. And which he did. He reported to Wigfall, who was his superior officer, Tucker being a private, um Wigfall being a PFC. And then when they finished going through the line, then they got back with Pele. And by that time he had been attacked by the prisoners. But we maintain that their position was appropriate under the guidelines because they were attempting to maintain order and discipline in the facility by going ahead and feeding the inmates and keeping them from getting getting riled up. They got back with him immediately. By that time, he had already been attacked by by the inmates. But that Tucker had gone through the line. Now, these two officers, Maybank, these two officers, Tucker and Wigfall had no knowledge that this guy had been that he was, uh, had had a sex sexually assaulted a female and they didn't know. They did know that he was that he professed to be very frightened of assault. No question about that. So I'm not sure why it would be relevant that they had no knowledge that he had sexually assaulted a female. Don't prisoner officials have an Eighth Amendment obligation to protect prisoners from violence at the hands of other prisoners, don't they? Well, they do. They do. But the point in this case, John, is is it clearly established, which we submit that it's not that you cannot in good faith, making a discretionary decision and acting no question about it in good faith that you can't put assigned duties in front of that and have a 20 minute delay. Now, this is not a denial of due process. This is a delay of due process for 20 minutes, and we can't find any case establishing that. As a matter of fact, we've cited in our, um, reply brief the case of of cannon. Okay. Well, in which basically it's a similar similar kind of case in the and this is the United States Supreme Court case and the United States Supreme Court. They had a similar situation there in which a a I think it was an Eighth Amendment case in a correctional facility that the prisoner sent a note to the prison authorities saying that he was being threatened by the inmates, and there was a two day delay from the time just clearly a negligent kind of thing. And we submit in this case that the most we have in this case is not a constitutional violation. The most we have on in this case is is negligence. And, of course, negligence is not actionable in a section 1983. But we found that an eight minute delay in responding to a request for assistance violated clearly established constitutional standards. And there are some circumstances in which officers may be held liable for failing to take any action to avert an attack when they knew that a threat existed. Your Honor is referring to what case over Winfield? Yeah, Winfield is case. In fact, the appellee conceded that Winfield was probably our best case, and we came back in our, um, reply brief and said no, that we thought the cannon case was actually stronger than that. But, um, yeah, we said we cited Winfield, your Honor, that we thought that was that was a good case in our favor. Why? How did the I guess basically our question is part of the fact that Winfield support your argument? Okay, so we we saw a U. S. Supreme Court case, your Honor. I think the question regards Winfield. Yeah. You may. As we state in our brief, your Honor, not only do appellants believe there's no such case clearly established in such law, but in fact, appellants believe that the en banc case of Winfield v Bass as authority that appellants for any reasonable person to the contrary is not required to intervene immediately in a situation to avoid Eighth Amendment, 14th Amendment liability. Now we realized that Winfield was only a 10 second, um, delay. In fact, they and the officers did not stand aside. But the Fourth Circuit held in this in the context of this case, we ultimately called upon to decide whether it was clearly established in February of 93 that an unarmed prison official would be deliberately indifferent, which, of course, is a standard in which is a high, difficult standard to meet an inmate needs for safety of doing an attack by a prisoner armed with a dangerous weapon upon another prisoner. The official instantly mobilized to take control of the didn't. We also recognize that there would be circumstances under which officials might be liable for failure to take any action. That's true. That's true. But we don't think they're present in this case, Your Honor. We think that the officers in this case, in order to ensure discipline and order that they had valid reasons for delay in 20 minutes. And we think under the three for taking reasonable action. And we believe that under the facts of this case on slattery versus reason that the officers certainly could have believed that they were not committing a constitutional violation. And we submit that in this particular case is just negligence at the most, which we've cited in our reply brief. There's no liability. The United States Supreme Court says for just negligent acts and that we're asking the court to throw out the section 1983 action to grant qualified immunity to the appellants and then under the and then either remand the case back or dismiss dependent claims. Thank you very much, Mr Stuckey. Mr Myers. Thank you, Your Honor. May it please the court. Greg Myers for Mr Denny. Mr Myers. The district court address the misassignment claim. The district court didn't put any didn't factor the misassignment issue into the constitutional questions. The context. It seems to me the jail itself has rules designed to effectuate the constitutional protection to protect prisoners. The reason I ask is the failure to protect claim. It was clear, clearly address. Yes, I didn't see that clear addressing of the misassignment claim. And therefore, I wonder if we have a legal ruling to review. Well, I have maintained that it's a fact intensive inquiry that is before the court. And my question, but my question for purposes of our review is whether or not what are we reviewing from the district court? Because I didn't see where the district court address yet. Yeah, the district court doesn't get into the assignment policy apparent failure at the Berkeley County Detention Center as part of the crisis about not responding. The context of the assignment problem is they are well aware that when you're charged with lewd act on a minor, which is what the charge was not assault, there's lewd act on a minor. You anything involving the elderly, anything involving children is what the 30 B six witness Sergeant Jackman explained means you are subject to being assaulted by other inmates. They know that. That's why they have the classification policy. They didn't follow it that night. They say, well, we were crowded. We didn't have any choice. But if indeed you have no choice, you should be particularly mindful and particularly responsive. If somebody who fits that very profile then reports to you specifically, I'm about to be attacked by these people. And that I think is the failure. The district court didn't go to the crisis issue, which is he gave you specific notice and you failed to respond to it for 20 minutes. Now, what the detention center is arguing, what the officers are arguing here is vastly different than what happened in Winfield. Winfield helps us because this court granted qualified immunity, but only by saying, look, you're not required to take heroic measures. You're not as an unarmed person constitutionally obligated to confront an armed inmate. You are allowed to take 10 seconds and go get yourself armed. But all of those officers responded immediately here. They didn't respond at all. And what they're trying to say is not only do we not have to take heroic measures, we are allowed to put in front of the constitutional duty routine measures. Show me a jail where the officers aren't busy. It doesn't exist. Well, in a typical jail setting, if you have upwards of 300 inmates going through the chow line. Subject to getting riled up as your opponent suggested, and as we see, it's agreed upon and debrief subject to getting riled up if their breakfast is delayed, going through that line, getting trays and utensils. How is it objectively unreasonable for an officer to wait to control that situation and supervise it to prevent injury or harm to any number of inmates in that line or to the officers themselves, as opposed to addressing the potential need or fear of one? I would say two things, Your Honor. First, there's nothing in the record that indicates anybody was getting riled up. I agree. It was the potential the officers perceived of delaying dinner, but then also having one leave his caught post to address the claim of one as opposed to monitoring these inmates getting their trays and their utensils and going on back to finish their breakfast. Yeah. If there was a real security issue, which the record doesn't indicate there was, that's at least a legitimate consideration. Can't we presume there's always a security interest when you have them out there going through the line and one would leave his post only one? Yeah. At every moment you can presume there's a security interest underlying everything going on in a detention center. No argument with that. But here's the problem. There are five alternatives that they had readily available to them, one of which required no delay whatsoever in the breakfast. And what Tucker testifies that Maybank or that Wigfall said to him was, we're going to finish breakfast, then you're going to finish the lockdown, which is the counting procedure, then you're going to distribute medications, then we'll go back and check on Mr. Denny. All right. He wants to elevate the routine things that any jail under every circumstance would be able to say was more important or was more pressing. And this is a context in which they know Mr. Denny has this risk. He has an unusual risk. It's not the general risk. It's a specific risk addressed both by their policy, addressed by their inmate rules. It's just that none of these deputies followed it. They all had their own preconceived ideas that they interposed hurdles for Mr. Denny to jump through, none of which are legitimate, none of which rise to the magnitude and the significance of the constitutional duty to be protected. You refer to it as a routine, but it's the team perform for the specific purpose of ensuring the security of the inmates. What I'm saying is that that routine is not in conflict with the alternatives to protect Mr. Denny. They don't have to make that choice. They want to argue that they have the luxury to make that choice if they choose to, but that is not even a legitimate position that they have. They weren't in that conundrum. All they had to do is have Mr. Denny, it's choice number three as set out in our brief. We did it in both briefs, and it's in the footnote of the supplemental brief on page six, and it's item number three. All they had to do is have Mr. Denny accompany him, or he could have walked about from here to there to put him in the bubble, as they say in the cell, where he would have been confined. I mean, no delay, a delay of five seconds, a delay of 15 seconds, 15 steps was the way the distance was estimated. That's all they're being asked to do, and they can completely accommodate whatever other interest they think is competing. But in fact, there's nothing in the record that indicates it isn't competing interest. The danger that is being advocated to this court is every jail is busy, every jail has routines, and if the person known to be exposed to the risk presents the specific threat they've been trained and have rules to respond to, and they don't respond to it, you're going to have guys like Mr. Denny with the permanent injury he's going to carry for the rest of his life, and that's going to be routine. You're just going to have people beat up anytime somebody wants to beat them up. There's a lot of beatings that go on in the Berkeley County Detention Center that they weren't even aware of. They only found out about them when they started investigating after the fact. And this is not a very safe environment, but they're not even asked to compromise that legitimate interest in safety to protect Mr. Denny. Follow your own rules, don't invent your own rules, you don't get qualified, you shouldn't get qualified immunity, we contend, if what you've is invented your own criterion to elevate it above the facility's rules that you're supposed to know and follow to deprive Mr. Denny of a constitutional right. None of those routine things rise to a constitutional level. Heroic measures, when you've done your best to respond quickly, you're off the hook for those, as you should be, because that's not reasonable to ask. But in Saussure, the way the Supreme Court framed it is, what does a reasonable officer understand are his responsibilities? They are not to hand out medication when somebody that you know is exposed to this danger is about to be beat up and tells you that, and you don't have to make any compromise in the overall safety of the facility to respond to it. That's our position. That's why we think qualified immunity is not properly granted to these officers, and that's why we think the court should either decline to hear the case, because it's fact-intensive, or affirm the district court's finding. That's the heart of my position. Thank you very much. Thank you. Mr. Stuckey, you have some time on rebuttal. May it please the court, qualified immunity, of course, is a judge-created concept. In order to protect discretionary decisions by government officials, and it's certainly applicable in this case. Your Honor, in reference to your inquiry about Winfield v. Bass, we note that the court said in that decision, quoting from Brennan v. Farmer, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety, and the courts harp on the fact about to ensure reasonable safety and that officers should act reasonably, a standard that incorporates due regard for the prison official's unenviable task of keeping dangerous men in safe custody under humane conditions. Whether one puts it in terms of duty or deliberate indifference, which of course is a standard, and courts have said time and time again, and this is a very, very high standard to meet. Prison officials who act reasonably cannot be found liable under the Eighth Amendment. Addressing your issue, this court said in Grayson v. Peed, 195 Federal 3rd, 392, quote, in dealing with agitated detainees, prison officials must not be forced to walk a tightrope and face the prospect of a lawsuit no matter which way they turn, and so qualified immunity is granted for that. These officers had a legitimate excuse because they were trying to ensure good order and discipline is the reason for the act of the way they did, and they delayed only 20 minutes. And the case we've cited in our reply brief, the United States Supreme Court case of Cannon v. Davison, there was a delay of two days there after a note had been sent to the prison officials, and the court in that case said the guarantees of due process, the guarantee of due process, has never been understood to mean that the state must guarantee due care on the part of its officials. And the court went on to say, and we held in Daniels, the protections of the due process clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials. And we submit that at the most, these officers were just negligent at the most, but certainly that does not rise to the standard of a violation of the due process clause, the Eighth Amendment cruel and unusual punishments standard, and we submit that they, since they, no question they acted in good faith, no question they had reasons for what they did, no question, but they delayed because of their assigned duties of finishing feeding the inmates and dispensing medications, delayed a maximum of 20 minutes before they took action. So we're asking the court to grant qualified immunity. We think it's a very strong case, almost conclusive on qualified immunity, that they are officers who act in good faith and exercise discretion. As a matter of fact, under South Carolina law, it's a violation of law not to exercise discretion. So an officer, a person who has discretionary authority must exercise that discretion. And the officers did that here, and we submit they're entitled to qualified immunity. We submit that summary judgment should have been granted, and we're asking the court to grant summary judgment, to grant qualified immunity, and under United Mine Workers v. Gibbs to also dismiss dependent actions. And I thank you. Thank you very much. We will ask the clerk to adjourn court, and we will come down and brief counsel. This honorable court stands adjourned until tomorrow morning at 8 30. God save the United States and this honorable court.
judges: Allyson K. Duncan, Stephanie D. Thacker, Gina M. Groh